Joanne W. COLEMAN, Plaintiff,

v.

NATIONWIDE LIFE INSURANCE CO., Defendant.

Civ. A. No. 90–00019–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 16, 1990.

■■■■■■■■■■■■■■■■■■■

John B. Mann, Levit & Mann, Richmond, Va., for plaintiff.

E. Lewis Kincer, Jr., Mezzullo & McCandlish, Richmond, Va., for defendant.

## ORDER

SPENCER, District Judge.

This matter is before the Court on cross-motions for summary judgment. For reasons stated below, defendant's motion for summary judgment will be denied, plaintiff's motion for summary judgment will be granted, and judgment will be entered for plaintiff.

### I

The plaintiff in this case is Joanne W. Coleman. The defendant is Nationwide Life Insurance Company ("Nationwide"). Coleman has brought an ERISA action against Nationwide, seeking payment for the hospitalization expenses she incurred while giving birth to a son. Nationwide asserts that it is not liable to Coleman for those expenses because the policy under which she claims coverage was not in effect at the time she incurred those expenses.

The material facts of this case are undisputed. Coleman and her husband participated in a group health insurance plan provided by her husband's employer, Roofing Concepts, Inc. ("Roofing Concepts"). Aetna Life and Casualty had been the insurer for this plan, but in late 1988 Roofing Concepts terminated its coverage with that company and applied for coverage with Nationwide. Roofing Concepts submitted its application to Nationwide on November 1, 1988. Nationwide accepted the application and sent Roofing Concepts a certificate of insurance with a November 1, 1988 effective date. Roofing Concepts agreed to pay one hundred percent of the premiums due on the policy.

Roofing Concepts paid Nationwide a monthly premium deposit of $3,665.63 for issuance of the certificate of insurance. Soon afterward, Nationwide's underwriters calculated Roofing Concepts' actual monthly premium to be $3,709.42. Nationwide billed Roofing Concepts an additional $43.79 for the balance of the first month's premium, as well as $3,709.42 for the next month's premium. Roofing Concepts never paid the $43.79 balance and never made any other premium payments. Roofing Concepts went out of business on February 15, 1989.

Coleman was pregnant when Roofing Concepts began its coverage with Nationwide in November of 1988. Over the next two months, Coleman made several inquiries to assure herself that she would be covered under the Nationwide plan for the hospitalization expenses that she would incur in connection with the delivery of her child. In response to one of those inquiries, Cheryl A. Reinecke, a Nationwide account representative, sent Coleman a letter dated December 1, 1988. In the letter Reinecke informed Coleman of the benefits that she was eligible to receive under the Nationwide policy. Reinecke also attached to the letter a brief summary of those benefits. In addition, Reinecke advised Coleman as to what her Nationwide policy and certificate numbers were.

On December 5, 1988, Coleman received a letter from Capp Care, Inc. ("Capp Care"), a "cost containment organization" used by Nationwide. In this letter Capp Care authorized Coleman for a two-day hospital stay for childbirth and gave her an authorization number. Capp Care listed Nationwide as the "Payor" for the hospitalization.

Coleman made additional telephone calls to Nationwide and Capp Care in December 1988 and January 1989. Each time, the Nationwide employees to whom she spoke advised her that she had hospitalization coverage and the Capp Care employees advised her that her hospitalization was approved.

On January 25, 1989, Coleman gave birth to a son at Chippenham Hospital in Richmond, Virginia. As of that date, no one at Nationwide had given her any indication

that Roofing Concepts had failed to make its premium payments or that her coverage might be jeopardized as a result. Nor had anyone at Capp Care or Roofing Concepts so informed her.

As noted above, Roofing Concepts went out of business on February 15, 1989. The next day, Roofing Concepts informed Nationwide of this development and asked that it "cancel the insurance policy in effect with Roofing Concepts, Inc. at the earliest possible date." Affidavit of Joanne W. Coleman, Plaintiff's Exhibit D, *Coleman v. Nationwide Life Ins. Co.*, C.A. No. 90–00019–R (E.D.Va. filed Jan. 12, 1990). On March 6, 1989, Nationwide sent a reply letter indicating that because Roofing Concepts had made no payments of premium other than the initial partial deposit, Nationwide would cancel Roofing Concepts' coverage as of the policy's effective date, November 1, 1988. When Nationwide later received bills for Coleman's hospitalization at Chippenham, it informed Coleman's husband that it would not pay those bills because the Colemans' coverage under the Roofing Concepts plan had been cancelled effective November 1, 1988.

## II

The Court will grant Coleman's motion for summary judgment. The Court rejects Nationwide's argument that it cannot be liable for the hospitalization expenses Coleman incurred in January 1989. Nationwide bases this argument on the assertion that the Roofing Concepts plan, and thus Coleman's coverage, was void from inception due to Roofing Concepts' failure to make even one complete payment of premium.

The Court need not decide whether the Roofing Concepts policy was void from inception. Even if the policy were void from inception, Nationwide would still be liable to Coleman under theories of breach of fiduciary duty and estoppel.

### A. *Breach of Fiduciary Duty*

■ Nationwide breached its fiduciary duty to Coleman by neglecting to inform her that Roofing Concepts had failed to pay premiums due under the plan. Nationwide has argued that it had no fiduciary duty to inform Coleman of nonpayment because it was neither the "administrator" nor the "sponsor" of the Roofing Concepts plan. The Court agrees that Nationwide was neither the administrator nor the sponsor of the plan; under the applicable ERISA definitions, *see* 29 U.S.C. §§ 1002(16)(A) and (B) (1988), Roofing Concepts filled both of those roles.

The Court finds, however, that although Nationwide was not a sponsor or administrator of the plan, it was nonetheless a fiduciary for the plan. Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (1988); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989).

The ERISA definition of fiduciary, itself broadly worded, is to be construed liberally by the courts. *See, e.g., McNeese v. Health Plan Mktg., Inc.*, 647 F.Supp. 981, 983–984 (N.D.Ala.1986) ("Congress intended that this definition be broadly construed and 'include persons who have authority and responsibility with respect to the matter in question, regardless of their formal title.'") (quoting *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir.1984)). A person need not be denominated a fiduciary in order to be one. *Id.* "If the person exercises management over assets, renders investment advice or exercises discretionary administrative control he is a fiduciary for purposes of ERISA." *Id.* (citing *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985)). More-

over, "an insurer [such as Nationwide] does not have to have total discretionary powers over a plan's assets before it becomes a fiduciary." *Id.*

Nationwide falls within the expansive ERISA definition of fiduciary. The Roofing Concepts plan did not name Nationwide as a fiduciary or explicitly place fiduciary duties upon it. The Court finds, however, that Nationwide possessed considerable authority, discretion and administrative control with respect to the plan. This is sufficient to confer fiduciary status upon Nationwide under ERISA's broad conception of that term.[1]

As a fiduciary, Nationwide was obligated to notify insureds such as Coleman of Roofing Concepts' nonpayment of premiums. *See McNeese,* 647 F.Supp. at 985 ("Several courts have held that at a minimum, the fiduciary under ERISA has an obligation to notify the employees of the employer's failure to contribute to the pension fund as required by the pension agreement."). Without such notice, Coleman lost the opportunity she otherwise would have had to seek out alternative sources of insurance. *See Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 74 (4th Cir.1989) ("Plan participants should not lose pension benefits through mistakes and misunderstandings."). By failing to inform Coleman of Roofing Concepts' nonpayment, Nationwide breached its fiduciary obligation. *See id.* at 986 (Where "[the defendant] did not make an effort to notify any of the claimants ... concerning the financial problems with [the plan], ... this failure constituted a breach of the defendants' fiduciary obli-

gations to the plaintiffs because without notice they were not able to make other arrangements for insurance coverage.").

In *Rosen v. Hotel & Restaurant Employees & Bartenders Union Local 274,* 637 F.2d 592 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981), the court found that a union pension fund had breached its fiduciary duty by failing to inform a union employee that his employer's contributions to the fund were in arrears and by failing to take action against the employer for its continued refusal to contribute to the fund. The court noted that—

> If a trustee's fiduciary duty requires anything in the administration of the trust, it requires him to inform the pensioners of their employers' failure to make the required contributions to the fund. Continued eligibility is the core of the trustee beneficiary relationship and those responsible for the administration of the fund are required to notify pensioners when their employer jeopardizes their eligibility.

*Id.* at 600; *see also Pension Benefit Guar. Corp. v. Greene,* 570 F.Supp. 1483, 1499 (W.D.Pa.1983) (defendant trustees breached fiduciary duties by failing to notify pensioners of employer's delinquent contributions to pension fund), *aff'd,* 727 F.2d 1100 (3d Cir.), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984).

Because Nationwide breached its fiduciary duty, summary judgment will be granted in Coleman's favor. Although Nationwide has not argued the contrary, it should again be noted that a clear causal connec-

---

1. Nationwide relies upon two cases which, it asserts, suggest that it had no fiduciary duty to notify Coleman of Roofing Concepts' nonpayment of premiums. *See Moran v. Aetna Life Ins. Co.,* 872 F.2d 296 (9th Cir.1989); *Davis v. Liberty Mut. Ins. Co.,* 871 F.2d 1134 (D.C.Cir. 1989). Neither of those cases supports that position, however. The insureds in *Moran* and *Davis* brought suit on the ground that the insurers had failed to provide them with summary plan descriptions. Under ERISA, plan administrators must furnish all plan participants with summary plan descriptions. 29 U.S.C. §§ 1024(b)(1), 1132(c) (1988). The courts ruled for the insurers in both cases because the insurers were not the *administrators* of the plans at

issue. Nationwide has correctly pointed out that it was not the administrator of the Roofing Concepts plan. This disposes of Coleman's claim based on failure to provide a summary plan description. It does not, however, affect Coleman's claim that Nationwide failed to notify her of Roofing Concepts' nonpayment of premiums. As the *Moran* court noted, a claim based on failure to provide a summary plan description is distinct from a claim based on failure to give notice of an employer's nonpayment of premiums. *Moran,* 872 F.2d at 300. The latter claim does not depend on Nationwide's being an administrator of the plan; it is sufficient that Nationwide was a fiduciary for the plan.

tion exists between Nationwide's breach and Coleman's loss. Had Nationwide notified Coleman of Roofing Concepts' nonpayment of premiums, she could have made other arrangements to obtain insurance covering her hospitalization.

## B. Estoppel

■ The Court further finds that even if Nationwide has not breached any fiduciary duty owed to Coleman, it is still liable to her under principles of estoppel. The "[e]lements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment." *T... v. T...*, 216 Va. 867, 873, 224 S.E.2d 148, 152 (1976). "[T]he party relying on estoppel must prove each element by 'clear, precise and unequivocal evidence.'" *Harris v. Criterion Ins. Co.*, 222 Va. 496, 502, 281 S.E.2d 878, 881 (1981) (quoting *Employers Ins. Co. v. Great American Ins. Co.*, 214 Va. 410, 415, 200 S.E.2d 560, 564 (1973)).

Although Coleman's burden of proof is a heavy one, she has made a sufficient showing on each estoppel element to obtain summary judgment. First, the evidence clearly shows that Nationwide—through a letter and telephone conversations—represented to Coleman that her hospitalization expenses would be covered.[2] *See City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir.1977) ("one may be misled as much by implication as by express statement"). It is undisputed that Coleman reasonably relied on these representations, that she changed her position in reliance (i.e., by not switching coverage), and that she incurred a detriment as a result.

Nationwide's primary argument with estoppel is that when Cheryl Reinecke, its account representative, made the representations to Coleman, she (Reinecke) was justifiably assuming that Roofing Concepts would pay premiums on the policy as required. Even if Reinecke were making such an assumption, however, this would not affect the estoppel analysis. The only requirement under the first element of estoppel is that a representation be made; it is not necessary that the representation be fraudulent, deceitful or unreasonable. *See id.* ("... deceit is not an essential element of estoppel. It is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped ...") (citation omitted).

Nationwide also argues that estoppel is disfavored in the ERISA scheme and cannot be a basis for recovery under that statute. There is some support for this position. The Ninth Circuit appears to have rejected the use of estoppel theories in at least some ERISA suits. *See Davidian v. Southern Cal. Meat Cutters Union & Food Employees Benefit Fund*, 859 F.2d 134, 136 (9th Cir.1988) ("[W]e applied a no-estoppel rule in a suit for employees benefits against a jointly-sponsored trust fund. There are no contrary holdings in this circuit.").

On the other hand, the Third Circuit has allowed ERISA plaintiffs to recover on estoppel theories. In *Rosen*, the Third Circuit stated that "the application of estoppel in pension cases is not altogether novel." *Rosen*, 637 F.2d at 598. It also quoted an opinion, which held—

> The *sui generis* nature of the pension agreement ... should not immunize it from the equitable principles that govern similar agreements. The rising ethical standards in business relations which the estoppel doctrine is designed to enforce are no less needed in the administration of pension funds ... If anything, estoppel is appropriate here."

*Id.* (quoting *Scheuer v. Central States Pension Fund*, 358 F.Supp. 1332 (E.D.Wis. 1973).

■ The parties have cited no Fourth Circuit authority on this issue, and the Court has discovered none. Under these circumstances, the Court declines to rule that the equitable remedy of estoppel is unavailable to plaintiffs, such as Coleman,

---

**2.** Capp Care made similar representations to Coleman through correspondence and tele-phone conversations.

**434**

who sue under ERISA. Coleman's motion for summary judgment will therefore be granted on grounds of estoppel as well as breach of fiduciary duty.

### III

In accordance with the foregoing, defendant Nationwide Life Insurance Company's motion for summary judgment is hereby DENIED and plaintiff Joanne W. Coleman's motion for summary judgment is hereby GRANTED.

Nationwide is hereby ORDERED to pay Coleman the amount of $6,048.86, which represents hospitalization expenses for which Coleman did not receive reimbursement, plus the reasonable costs she incurred in this litigation, including reasonable attorney's fees. IT IS FURTHER ORDERED that Coleman may have until October 26, 1990 to file an itemization of attorney's fees and costs incurred in this litigation. Nationwide may have until November 9, 1990 in which to file an opposition to Coleman's submitted itemization of costs and attorney's fees.

The Court notes that Nationwide filed a third party complaint against Roofing Concepts, Inc. on February 7, 1990. Roofing Concepts does not appear to have responded to that pleading. The Court hereby DIRECTS Nationwide to advise it of the status of the third party complaint.

And it is SO ORDERED.