790 F.Supp. 1456 (1992)
Deborah J. KERNS, Plaintiff,
v.
BENEFIT TRUST LIFE INSURANCE COMPANY, et al., Defendants.
No. 89-1591-C-5.
United States District Court, E.D. Missouri, E.D.
April 22, 1992.
*1457 Fairfax Jones, Casserly, Jones & Brittingham, St. Louis, Mo., for plaintiff.
James P. Lemonds, Holtkamp, Liese, Beckemeier & Childress, St. Louis, Mo., for defendant William L. Meyer.
Clark H. Cole and Keith A. Rabenberg, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, Mo., for defendant Benefit Trust Life Ins. Co.

MEMORANDUM OPINION
LIMBAUGH, District Judge.
Plaintiff Deborah J. Kerns originally filed this action against Benefit Trust Life Insurance Co. ("Benefit Trust") and William L. Meyer in the Circuit Court of the City of St. Louis, Missouri. Benefit Trust removed the case to federal court based on federal question jurisdiction. Plaintiff seeks recovery under an employee welfare benefit plan as that term is defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff subsequently filed her first amended complaint adding Jerry Spitzer, Elizabeth N. Paul and William Spinks as defendants. Subsequently, the Court granted the Spitzer's and Paul's motions for summary judgment on the basis that plaintiff failed to put forth any evidence that either was a fiduciary with respect to the insurance policy. The Court also granted defendant Benefit Trust's motion for summary judgment on the basis that the policy was not in effect at the time of Mr. Kerns' death and that Benefit Trust was not liable for Mr. Meyer under agency theory. Before trial, plaintiff dismissed Spinks without prejudice and the case proceeded as to Mr. Meyer only.
The case was tried before this Court sitting without a jury on July 1 and 2, 1991. This Court, having now considered the pleadings, the testimony of the witnesses, the deposition testimony, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

FINDINGS OF FACT
The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act ("ERISA"), Title 29 U.S.C. 1132(e)(1).
Plaintiff Deborah J. Kerns is a citizen of St. Louis, Missouri. Defendant William L. Meyer is a citizen of St. Louis, Missouri.
At all times material to this action, plaintiff was married to Michael S. Kerns. In 1986, Mr. Kerns formed three companies: M.S. Kerns Investments, Inc. ("Kerns Investments"), M.S. Kerns, Inc. and M.S. Kerns Holding Company (the "holding company"). Kerns Investments and M.S. Kerns, Inc. were wholly owned subsidiaries of the holding company. Mr. Kerns was the president and CEO of each company.
On September 1, 1987, Benefit Trust issued a group policy of insurance to Kerns Investments, contract number D2260. As an employee of Kerns Investments, Mr. Kerns was insured under the group policy and Benefit Trust issued certificate number XXX-XX-XXX to him. Under the terms of the policy, Benefit Trust insured the life of Mr. Kerns for $50,000.00. In the event of the accidental death of an insured an additional sum of $50,000.00 would become payable to the beneficiary of the policy. The policy further provides that no accidental death benefits are paid for intentionally self-inflicted injury while sane, or for suicide or attempted suicide while sane.
Mr. Meyer conducted an insurance brokerage business and sold securities through Kerns' firm. He shared an office with Kerns Investments. The arrangement was that Mr. Meyer was an independent contractor: he paid all of his own expenses, had his own furniture, determined his own working hours and conditions, paid his own employees, and withheld tax on himself and his employees. Kerns *1458 was not involved with any business that Mr. Meyer generated and received no income from that. On business that Mr. Meyer did broker through Kerns, Mr. Meyer would get 90 percent of the commission and Kerns would keep 10 percent. Later, Kerns moved the offices and the arrangement changed somewhat. Mr. Meyer would pay Kerns twenty-five percent of his commissions as rent.
At one time, Mr. Kerns considered having an insurance division of one of the Kerns companies. Mr. Meyer was considered as president of the insurance division although there was never any legal establishment of that name. He did, at one time, carry a card which indicated that he was president of the insurance division, although there was no formal legal designation of this. The method of doing business never changed.
Mr. Meyer was not an officer or director of any of the Kerns companies. He was not a Kerns' employee nor was he designated as a fiduciary of the plan. Mr. Meyer had no authority to obligate any of the Kerns companies for the corporate debt and was not an insured on any of the Kerns insurance policies. He was not a signatory on any of Kerns' checking accounts and had no authority over Kerns' employees. He did not render investment advice regarding the plan, nor did he have any discretionary authority with respect to purchasing or selling any plan property.
Mr. Kerns asked Mr. Meyer to bid the health insurance policy for the Kerns companies. Mr. Meyer made several proposals to different companies, showed them to Mr. Kerns and Mr. Kerns selected Benefit Trust. Mr. Meyer signed the application for the group policy as the writing agent of Kerns Investment, however, he denied being the actual agent of Benefit Trust. The application was actually prepared by Susan Sander, a Benefit Trust employee. Mr. Meyer never received any commissions for that policy. The commission was paid to M.S. Kerns, Inc.
Mr. Kerns was solely responsible for causing Kerns Investments to pay the premiums. He exercised discretion as to selecting the plan and as to when or whether to pay the premiums.
Mr. Meyer and his assistant, Debbie Castiglioni, helped Kerns employees to fill out their claim forms and tried to answer questions regarding their health insurance. They were not compensated for this assistance.
Claims by employees of Kerns Investments under the group policy were submitted either directly to Benefit Trust or through Mr. Meyer and Ms. Castiglioni. Benefit Trust paid for claims covered by the group policy and rejected claims for benefits not provided for by the group policy. Benefit Trust processed health insurance claims under the group policy and implemented the terms of the policy. Mr. Meyer had no authority to issue Benefit Trust checks to pay claims.
Kerns Investments was responsible for making the required payments of premiums to Benefit Trust for the group policy. Mr. Kerns, as president and CEO, was the individual at Kerns Investments who was solely responsible for choosing how and when to pay such premiums to Benefit Trust, pursuant to the policy requirements. He had sole authority to pay the premiums. Mr. Meyer had no authority to issue checks to pay premiums.
At the time the policy was issued, Mr. Kerns was separated from plaintiff and was personally involved with Elizabeth Kaemmerer (now Elizabeth Paul), another employee of M.S. Kerns Investments. Mr. Kerns initially named Ms. Kaemmerer the beneficiary of his interest in the group life insurance policy.
In November 1987, Mr. Kerns was diagnosed with cancer of his jaw. Because of the cancer, he was twice hospitalized and had part of his jaw removed. About the end of 1987, Ms. Kaemmerer broke off her relationship with Mr. Kerns. Mr. Kerns continued to live separately from his wife, the plaintiff.
Kerns Investments had a pattern of paying the premiums on the insurance policy late and payments were made to catch up on a monthly basis during the grace period. *1459 Each of Mr. Kerns' hospital stays occurred during the grace period in which the premiums were actually delinquent. On each occasion, Benefit Trust sent a letter to Kerns Investments advising that if overdue premiums were paid prior to the end of the grace period, Benefit would reinstate the policy without any lapse. Kerns Investments paid the premiums and all claims for benefits were paid.
After Mr. Kerns left the hospital in January 1988, he "lost his steam." He lost weight, became withdrawn and quiet. He was not his former easygoing and outgoing self. Mr. Kerns continued to conduct his business, although his work habits changed. He was sometimes late, had mood swings and lost his temper.
On February 29, 1988, Mr. Kerns executed a change of beneficiary request form and named plaintiff as the beneficiary of the life and accidental benefits under the group policy. Ms. Castiglioni provided the change of beneficiary form and witnessed Mr. Kerns' signature.
Prior to his death, Mr. Kerns wrote a series of letters over a period of months in which he proclaimed his feelings for Ms. Kaemmerer, his sadness that she had broken off their relationship, his dissatisfaction with his life and his intentions to end his life. He wrote letters to plaintiff and others explaining his reasons for taking his own life. The letters show Mr. Kerns gave careful deliberation to his actions and was aware of what he was doing.
Mr. Kerns died on May 4, 1988, as a result of a self-inflicted gun-shot wound.
Within a few days, Mr. Meyer contacted Benefit Trust and advised Ms. Sander at Benefit Trust that Mr. Kerns died as a result of suicide.
At the time of Mr. Kerns' death, the payments for Kerns Investments were again delinquent, but in a grace period. The last month for which Kerns Investments paid any premiums was March 1988, although the entire premium due for that month was not paid. The group policy terminated April 1, 1988. The premiums for the months of April and May 1988 were never paid.
Shortly after Mr. Kerns' funeral, probably on May 9, 1988, plaintiff went to the Kerns offices with Bertram Shostak and Harry Moline, who are law partners and friends of hers. Mr. Meyer recalled telling plaintiff at that time that he thought there was not any insurance coverage. While they were in the office, Ms. Castiglioni spoke over the telephone with Ms. Sander at Benefit Trust. Ms. Sander told her that there was no coverage, probably because of the suicide. Ms. Castiglioni relayed this to Moline, and he asked her to show him where the policy prevented payment because of the suicide. She called Ms. Sander back and Ms. Sander pointed to some place in the policy. Ms. Castiglioni copied that page with the purported exclusion and gave it to Moline. The exchange in the office was short and tense, partially because Ms. Kaemmerer was still in the office.
On May 9, 1988, Ms. Castiglioni drafted a letter to the participants of the group plan advising them that the policy had terminated on April 30, 1988 and that they should obtain other coverage. Mr. Meyer reviewed it and signed it. The letter was not sent to plaintiff.
On May 11, 1988, Benefit Trust sent a letter to Ms. Castiglioni notifying Kerns Investments that its group insurance premium had not been paid, but that Benefit Trust would reinstate all coverage, without any lapse, if the overdue payment was made by May 31, 1988. If payment was not made, the policy would be canceled as of April 30, 1988.
On about May 11, 1988, Meyer wrote a second letter to the participants of the group insurance policy, correcting the May 9 letter because the termination of the coverage was different than he had previously advised them. Defendant did not send a copy of the letter to plaintiff.
In June 1988, plaintiff submitted a claim to Benefit Trust for the life and accidental death benefits under the Group Policy. The claim was rejected for the reason that the group policy terminated prior to Mr. Kern's death.
*1460 Plaintiff was able to obtain the money to pay the premium payment in the period allowed by Benefit Trust if she had been notified of the nonpayment of premium.

CONCLUSIONS OF LAW
Plaintiff's claim is for benefits allegedly due her under an ERISA-governed employee benefit plan, pursuant to 29 U.S.C. § 1132(a). The group policy was purchased by Kerns Investments as a part of a benefit plan for its employees. The benefit plan created by Kerns Investments was an employee welfare plan as defined by 29 U.S.C. § 1002(1), and as such, the plan was covered by the ERISA, 29 U.S.C. § 1001 et seq.
This Court has exclusive jurisdiction over civil actions brought under ERISA for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(e). Venue is proper in this district as this is where the claim arose. 28 U.S.C. § 1391(b).
Kerns Investments was both the plan sponsor and the administrator of the employee welfare benefit plan. See 29 U.S.C. § 1002(16). Kerns Investments was solely responsible for payment to Benefit Trust of all insurance premiums for the group policy under the plan. Mr. Kerns had the sole authority to issue payment for the insurance premiums.
All coverage under the group policy terminated effective April 1, 1988.
The first step in determining whether there was a breach of fiduciary duty is to decide whether defendant had a fiduciary duty to plaintiff.[1] The ERISA defines a fiduciary as one who, with respect to an employee benefit plan, exercises any discretionary authority or control over management of a plan or disposition of the assets, renders investment advice for a fee or other compensation with respect to any money or other property of a plan, or has any discretionary authority or discretionary responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A).
In enacting the ERISA, Congress intended to protect participants in employee benefit plans by establishing standards of conduct, responsibility and obligations for fiduciaries of employee benefit plans and by providing for appropriate remedies. See Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1550, 95 L.Ed.2d 39, 45-46 (1987). Congress intended the definition of "fiduciary" under the ERISA to be broadly construed. "[T]he definition includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title." House Conference Rep. No. 93-1280, 93d Congress, 1974 U.S.Code Cong. and Ad. News 4639, 5038, 5103 (quoted in Donovan v. Mercer, 747 F.2d 304, 308 (5th Cir.1984)). A person's state of mind does not determine his or her fiduciary status. Farm King Supply, Inc. v. Edward D. Jones & Co., 884 F.2d 288, 293 (7th Cir.1989); Donovan, 747 F.2d at 309.
Although the term "fiduciary" is liberally construed, there are restrictions. For example, ERISA regulations explicitly reject ministerial functions as being within the scope of § 1002(21)(A). See 29 C.F.R. § 2509.75-8. The regulations show that a person is not a fiduciary because he may perform the following functions:
(1) Application of rules determining eligibility for participation or benefits;
(2) Calculation of service and compensation credits for benefits;
(3) Preparation of employee communications materials;
(4) Maintenance of participants' service and employment records;
(5) Preparation of reports required by government agencies;
(6) Calculation of benefits;
(7) Orientation of new participants and advising participants of their rights and options under the plan;
(8) Collection of contributions and application of contributions as provided in the plan;
(9) Preparation of reports concerning participants:
(10) Processing of claims; and

*1461 (11) Making of recommendations to others for decision of plan administration.
29 C.F.R. § 2509.75-8, Q & A D-2.
Mr. Meyer did not exercise discretionary authority with respect to the management of the plan and the disposition of assets. Donovan, 747 F.2d at 308-09. He did not have the authority to exercise control unilaterally for a portion of the plan assets. Farm King, 884 F.2d at 292. He did not have discretion in deciding whether claims were to be paid. McManus v. Travelers Health Network of Texas, 742 F.Supp. 377, 382 (W.D.Tex.1990). He did not establish the policies and procedures to be followed in evaluating claims. McManus, 742 F.Supp. at 382; Benvenuto v. Conn. Gen. Life Ins. Co., 643 F.Supp. 87, 90-91 (D.N.J. 1986). He did not exercise any power of control, management or disposition of with respect to property of the employee benefit fund. Buehler v. Home Life Ins. Co., 722 F.Supp. 1554, 1562 (N.D.Ill.1989). Mr. Meyer simply did not perform the types of functions that would make him a fiduciary with respect to the ERISA.
The types of functions that Mr. Meyer and his assistant[2] performed were merely ministerial. He conducted orientation of new participants and advised participants of their rights and options under the plan. He and his assistant provided claims forms, assisted Kerns employees to complete them and forwarded the forms to Benefit Trust. He notified Kerns employees after Mr. Kerns' death that they should find other insurance coverage. Mr. Meyer merely acted out of courtesy to others with whom he shared office space. These acts did not make him a "fiduciary" with respect to the plan according to the ERISA.
Even if Mr. Meyer were a fiduciary with respect to the plan, plaintiff must show he breached a fiduciary duty by failing to notify plaintiff of a nonpayment of insurance premiums. Section 1104 sets forth the duty of a fiduciary under ERISA. 29 U.S.C. § 1104(a)(1). ERISA basically codified the common law "prudent man" standard of care. National Labor Relations Board v. Amax Coal Co., 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981). The standards require a fiduciary to:
discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and ... with the care, skill prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims....
29 U.S.C. § 1104(a)(1)(B).
Plaintiff claims that Mr. Meyer breached his duty because he failed to notify the beneficiaries (particularly, plaintiff) that Kerns Investments failed to pay premiums for the group policy, which would cause claims to go unpaid (particularly, plaintiff's claim for life insurance benefits). By at least May 9, 1988, Mr. Meyer was aware that Kerns Investments had not paid premiums overdue to Benefit Trust and Mr. Meyer notified Kerns employees that insurance had lapsed and advised them to seek other coverage. At no time, did Mr. Meyer make any effort to contact the individuals that Kerns employees designated as their life insurance beneficiaries. Plaintiff received no written notice that the policy had lapsed.
"Several courts have held that at a minimum, the fiduciary under ERISA has an obligation to notify the employees of the employer's failure to contribute to the pension fund as required by the pension agreement." McNeese v. Health Plan Marketing, Inc., 647 F.Supp. 981, 985 (N.D.Ala. 1986). See, e.g., Rosen v. Hotel and Restaurant Employees and Bartenders Union, 637 F.2d 592, 600 (3rd Cir.1981), Aitken v. I.P. & G.C.U.-Employer Retirement Fund, 604 F.2d 1261, 1271 (9th Cir. 1979); Phillips v. Kennedy, 542 F.2d 52, 55 n. 8 (8th Cir.1976); Pension Benefit Guaranty Corp. v. Greene, 570 F.Supp. 1483 (W.D.Pa.1983), aff'd, 727 F.2d 1100 (3rd Cir.1984). However, none of these cases have extended the fiduciary's duty beyond the employees covered by the plan to the *1462 persons they designate as their life insurance beneficiaries.
In Coleman v. Nationwide Life Insurance Co., 748 F.Supp. 429, 432 (E.D.Va. 1990), the Court found that an insurance company was obligated to notify insureds under a health insurance plan of the employer's nonpayment of premiums based on breach of fiduciary duty and estoppel. The Court granted summary judgment in favor of plaintiff in her ERISA action against the insurance company.
In Coleman, the plaintiff was a participant in the health insurance plan provided by her husband's employer. Plaintiff was pregnant when coverage began and she personally made several inquiries to the defendant to assure herself she would be covered for the expenses she would incur in connection with the delivery of her child. In response, the insurance company sent her a letter informing her of the benefits that she was eligible to receive under the policy. Plaintiff was later "preauthorized" for a hospital stay in connection with the delivery. After plaintiff gave birth, her husband's employer went out of business and canceled its insurance coverage. Because the employer had made no payment other than an initial partial deposit, the defendant insurance company cancelled the policy as of the policy's effective date. The defendant informed plaintiff's husband that it would not pay the hospital bills for plaintiff's hospital stay for childbirth.
Coleman is distinguishable from the case now before the Court. First, the plaintiff in Coleman was herself an insured under the health insurance plan provided by her husband's employer. In this case, plaintiff was the named beneficiary of her husband's life insurance policy. While the fiduciary may have a duty to inform employees and other named insureds of an employer's nonpayment of premiums, this Court will not extend that duty so far as to beneficiaries of life insurance policies. The parties have cited no authority which would require the Court to do so and the Court has discovered none. To stretch the fiduciary duty under ERISA that far would require that whenever an employer is late in making a premium payment and is in danger of cancellation, someone  usually, the insurance company, would have to notify each participant and beneficiary of the plan. This would require keeping, and constantly updating, records of every employee, every employee's dependents and every dependent's potential life insurance beneficiaries. The burden, and expense, would be enormous. The fiduciary duty under ERISA is not that broad.
Second, the plaintiff in Coleman sought and received express affirmation of her coverage under the plan. The Court found that even if the defendant did not breach any fiduciary duty owed to plaintiff, it was liable under principles of estoppel. That was not the case here.
In sum, there was no breach of fiduciary duty by a failure to notify plaintiff of her husband's nonpayment of premiums for the Kern Investments group plan.
Finally, in order for plaintiff to recover, plaintiff must show a causal connection between the breach of fiduciary duty and the damages sustained. Plaintiff alleges that if defendant had notified her of Kerns Investments' failure to pay the premium, she could have borrowed the money, paid the premium herself and recovered the death benefits to the policy. Defendant does not dispute that. The group policy provides that a life benefit will be paid in the event an insured dies while covered. If the policy had been in effect at the time of Mr. Kerns death, plaintiff would have collected the life benefit. However, plaintiff would not be entitled to accidental death benefits as Mr. Kerns' death was not an "accident." See Wickman v. Northwestern National Ins. Co., 908 F.2d 1077, 1087-88 (1st Cir.1990) (accidental death is one that was undesigned, unintentional or unexpected). Mr. Kerns intended to kill himself. He was aware of what he was doing and in control of his actions. He was lucid and carefully considered taking his life for several months before doing so. The evidence showed that Mr. Kerns, although perhaps depressed, was not insane. Mr. Kerns' death was by suicide while sane, for which the group policy specifically *1463 excludes coverage for accidental death benefits.
The facts surrounding this lawsuit are indeed tragic. Mr. Kerns was the major force behind the Kerns companies. The company was the sponsor of the group policy and Mr. Kerns was solely responsible for making the premium payments. In the months before his death, the companies were having severe difficulties. The premiums went unpaid. In the days after Mr. Kerns' death, there was confusion, if not chaos. Mr. Kerns, who had been in charge, was gone. The future of the companies was uncertain.
Plaintiff's position is indeed sympathetic. Nonetheless, the Court must decide the case according to the law, and under the law defendant is entitled to judgment.
For the foregoing reasons, the Court enters judgment in favor of defendant and against plaintiff on the merits of plaintiff's complaint.

Benefit Trust's Motions for Summary Judgment
The Court previously granted summary judgment for defendant Benefit Trust, in part, because Benefit Trust was not a fiduciary with respect to the plan. The Court now sua sponte reconsiders that Order. Assuming that Benefit Trust became a fiduciary by exercising discretion in deciding whether claims were to be paid, McManus, 742 F.Supp. at 382, or by establishing the policies and procedures to be followed in evaluating a claim, Id.; Benvenuto, 643 F.Supp. at 90-91, Benefit Trust nonetheless was entitled to summary judgment. First, if Benefit Trust was a fiduciary, it was a fiduciary only to the extent it exercised discretion with respect to the plan. Leigh v. Engle, 727 F.2d 113, 133 (7th Cir.1984). Second, if Benefit Trust was a fiduciary, it had no duty to notify plaintiff of the nonpayment of insurance premiums for the same reasons as with regard to Mr. Meyer.
For these reasons and those set out in the Court's memorandum of June 28, 1991, Benefit Trust was entitled to summary judgment.

Spitzer's Motion for Sanctions
Defendant Jerry Spitzer filed a motion for sanctions against plaintiff and her attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure for failing to make a reasonable inquiry into the facts and the law before suing him. Rule 11 states that the signature on a pleading certifies that the signer has read the pleading; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existent law or a good faith argument for extension of the law; and that it is not entered for any improper purpose.
The Court previously granted summary judgment in favor of Mr. Spitzer on the ground that plaintiff failed to put forth evidence that Mr. Spitzer was a fiduciary with respect to the insurance policy. Memorandum and Order of February 28, 1991.
Plaintiff's claims against Mr. Spitzer were not frivolous at the time they were filed. As stated above, Congress intended the definition of "fiduciary" under the ERISA to be broadly construed. Donovan v. Mercer, 747 F.2d at 308. At the time plaintiff filed her first amended complaint, she had learned that Mr. Spitzer was the chairman of the board of Kerns Investments, Inc., that he was a financial advisor to Kerns Investments, that he was a director of the holding company and that Mr. Meyer may have discussed the existence of the May 19, 1988 letter from Benefit Trust or the insurance termination with Mr. Spitzer. While insufficient to entitle plaintiff to judgment, these facts satisfy the Court that plaintiff and her counsel made a reasonable inquiry into the law and facts of this case before filing suit against Mr. Spitzer.
Accordingly, Mr. Spitzer's motion for sanctions shall be denied.
NOTES
[1] Defendant Meyer was not the administrator of the plan, which would obligate him to give notice to covered employees of their rights under the plan. 29 U.S.C. § 1166(a)(4).
[2] Meyer admits he was responsible for the acts of his employee, Ms. Castiglioni.