974 F.2d 1331
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Anatole G. RICHMAN; Eurydice Richman, Plaintiffs-Appellants,
v.
AETNA LIFE INS. Company, Incorporated, Defendant-Appellee.
 No. 92-1149.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 8, 1992
Decided: August 31, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-91-1115-1)
 ARGUED: Richard Dennis Carter, Hudgins, Carter & Coleman, Alexandria, Virginia, for Appellants.
 Elliott Bruce Adler, Brett G. Kappell, Powell, Goldstein, Frazer & Murphy, Washington, D.C., for Appellee.
 ON BRIEF: Douglas M. Coleman, Jacqueline E. Bennett, Hudgins, Carter & Coleman, Alexandria, Virginia, for Appellants.
 E.D.Va.
 Affirmed.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The present case arises as an appeal of the district court's January 3, 1992 order granting to the appellee, AEtna Insurance Company ("AEtna"), the defendant at trial, its motion for summary judgment in its dispute with Anatole and Eurydice Richman ("the appellants"), the plaintiffs at trial. The appellants filed the complaint, seeking a declaratory judgment, against AEtna on August 14, 1991, alleging violations of state contract and insurance law, and of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. AEtna, treating the state law claims as preempted by ERISA,[1] filed a motion for dismissal or summary judgment, and the appellants filed a countering motion for summary judgment. The district judge granted AEtna's motion and dismissed the case. The appellants filed a timely notice of appeal.
 
 I.
 
 2
 Anatole Richman, one of the appellants, was a partner at the accounting firm of Laventhol and Horwath ("L & H") until his retirement in 1989. As a partner, he was a participant in L & H's Medical Benefits Plan ("the Plan"), and his wife, Eurydice, also an appellant, was a beneficiary of the Plan. The Plan included health benefits coverage, payment for which was extracted periodically from Anatole Richman's retirement checks. The Plan was self-funded by L & H. L & H entered into an Administrative Services Contract ("ASC") with AEtna on December 1, 1989. Pursuant to the ASC, AEtna agreed to "provide services for the administration and operation of the plan."[2] The ASC also expressed specific limitations on Aetna's potential liability:
 
 
 3
 AEtna shall not be liable or use its funds for the payment of benefits under the Plan ... and if, in the normal course of business under [the ASC], AEtna, or any other organization with which AEtna has a working arrangement, chooses to advance any funds, [L & H] shall reimburse AEtna or such other organization for such payment.
 
 
 4
 Eurydice Richman became ill, and her hospitalization expenses were covered by the Plan beginning in February of 1989.
 
 
 5
 On November 20, 1990, L & H terminated the Plan. The termination was followed with a memorandum of notice from L & H dated November 27, specifically indicating that the Plan had been terminated on November 20. The appellants claim that the Plan was not effectively terminated until December 7, 1990, when AEtna terminated the ASC with L & H.
 
 
 6
 On November 21, 1990, L & H filed for Chapter 11 bankruptcy. On February 25, 1991, in response to a letter sent by the appellants requesting information concerning the Plan, AEtna sent a letter referring to the November 27 memorandum in which L & H included an express declaration that the Plan had been terminated as of November 20, 1990.
 
 
 7
 The appellants have claimed that AEtna was either a fiduciary or co-fiduciary of the L & H Plan as defined by ERISA, that the Plan did not terminate prior to the date of L & H's bankruptcy, and that AEtna breached its fiduciary duty by failing to notify the appellants of their rights to continuing coverage under the COBRA provisions of ERISA. 29 U.S.C. §§ 1161(a), 1163(6), and 1165(1).[3]
 
 
 8
 The district court concluded that AEtna was not the sponsor or the administrator of the Plan, and that it was not a fiduciary under the Plan. Consequently, according to the district court, AEtna had no duty to notify the appellants of their rights under the Plan. The court also held that AEtna did not misrepresent any material fact to the appellants. The questions presented on appeal are first, whether the district court erred in concluding that AEtna had no duty to inform appellants of their rights to continuing coverage under the Plan, and second, whether AEtna violated any other duty assigned by ERISA. In that we conclude that the district court properly determined AEtna's responsibilities to appellant as a matter of law, we are obliged to affirm the grant of summary judgment.
 
 II.
 
 9
 The district court held that AEtna was not a fiduciary of the Plan as defined by ERISA. We need not resolve the issue of AEtna's fiduciary status, however, if it is shown that AEtna, as a fiduciary, had no duty to notify of the continuing coverage set out in COBRA. 29 U.S.C. § 1161 et seq. In that responsibilities under COBRA are expressly assigned to the "plan sponsor" and" administrator," as defined by the act, AEtna's alleged fiduciary status is non-dispositive of the question presented on appeal. The relevant inquiry in regard to the COBRA coverage concerns AEtna's potential status as a plan sponsor or administrator.
 
 
 10
 29 U.S.C. § 1161(a) states that: "[t]he plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualified event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." In the event of bankruptcy, one of the "qualified events" under the provision, "the [plan] administrator" is required to "notify ... any qualified beneficiary with respect to such event ... of such beneficiary's right under this subsection." § 1166(4).
 
 
 11
 ERISA sets out a specific designation of who may be considered the administrator or sponsor of a plan. ERISA provides that "The term 'administrator' means-the person specifically so designated by the terms of the instrument under which the plan is operated ... " 29 U.S.C. § 1002(16)(A)(i). The ASC in this case specifically designated L & H as the plan administrator in Section 5(a). The section also defines a "plan sponsor" specifically to include the employer or employers responsible for establishment of the plan, or an employee organization if it is responsible for the establishment. § 1002(16)(B). Even if a fiduciary, AEtna clearly was not designated under the Plan as a plan administrator, and is not the employer or an employee organization, preventing the conclusion that AEtna was a plan sponsor. Accordingly, AEtna had no specific duties to provide an opportunity for, or notify of, continuing coverage rights under COBRA.
 
 
 12
 The appellants contend, nevertheless, that although AEtna was not designated as plan administrator or sponsor, its fiduciary relationship created a "de facto " administrator connection with the plan, imbuing AEtna with the duty to perform relevant notification duties under COBRA. Appellants base their assertion on Coleman v. Nationwide Insurance Co., 748 F.Supp. 429 (E.D. Va. 1990), an opinion which has been recently reversed.[4] Even prior to its reversal, however, Nationwide did not provide direct or even implied support for appellant's claim that the express requirements of COBRA and ERISA should be circumvented once a party, not a sponsor or administrator, is determined to be a fiduciary. Such an assertion would have the effect of reading the specific designation of notice responsibilities under Cobra out of the provision.[5]
 
 
 13
 Accordingly, it is clear that, given the appellants' failure to show that AEtna was a plan administrator or sponsor, AEtna is entitled to affirmance of the district court's grant of summary judgment as a matter of law. Assuming that the appellants may have been entitled to continuing coverage under ERISA and COBRA, nevertheless there is no indication in the Plan documents that AEtna was responsible for providing that coverage, or for informing the appellants of the availability of it.
 
 III.
 
 14
 The remaining question presented on appeal is whether there is another basis for determining that AEtna violated a fiduciary or related duty to appellants. The issue concerns appellant's assertion that although AEtna may not have been responsible for notification of continuing coverage, it may be held responsible as a co-fiduciary for L & H's breaches of its duties to appellants. Assuming, arguendo, that AEtna had a fiduciary duty under the Plan, it is again clear that it did not violate any relevant duty owed to appellants.
 
 
 15
 Appellants contend that AEtna had a co-fiduciary duty obliging it to refrain from giving knowingly false notice regarding the termination of the plan announced by L & H. 29 U.S.C.s 1105(a) details the circumstances giving rise to liability as a co-fiduciary. A fiduciary of a plan shall be held liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
 
 
 16
 (1) if he participates knowingly in, or undertakes knowingly to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(1) [29 U.S.C. § 1104(a)(1) ][6] in the administration of his specific responsibilities which give rise to his status as fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary unless he makes reasonable efforts under the circumstances to remedy the breach.
 
 
 17
 It is clear from the provision that, if AEtna knew of L & H's breach of an obligation not to terminate the Plan prior to filing bankruptcy, and either failed to take reasonable steps to remedy the breach, or was complicitous in concealing the breach, liability would arise. Appellants contend that AEtna knew, or should have known, of L & H's breach of its obligation to continue coverage under the Plan until it filed for bankruptcy.
 
 
 18
 Appellants base their claim on a letter which AEtna wrote to Anatole Richman on February 25, 1991, in response to his letter of January 7, 1991, detailing L & H's activities concerning termination of the Plan. It stated in pertinent part:
 
 
 19
 On November 27, 1990, Laventhol sent a letter to all former Laventhol employees which addressed the termination of the Laventhol plan (a copy of this letter is enclosed for your convenience). The letter confirmed the termination of the Laventhol medical plan on November 20, 1990, and advised all former Laventhol employees to submit any claims that were pending on November 20 to Aetna for processing.
 
 
 20
 The L & H November 27, 1990 letter, of which AEtna provided a copy, advised all former employees that: "COBRA extension coverage also ceased on November 20, 1990." In its February 25 letter, AEtna accurately described L & H's activities. L & H did, on November 27, 1990, confirm that the Plan terminated on November 20, 1990. The appellants fault the letter for not volunteering what they claim AEtna must have known when writing, namely, that the Plan could not have terminated prior to the time that L & H filed for bankruptcy. The standard set out in the ERISA provision governing co-fiduciary liability, however, requires knowing falsity on the part of the cofiduciary. Appellant failed to present sufficient evidence of AEtna's direct knowledge of the impropriety of L & H's termination of the plan effective November 20, 1990 to support reversal of the district court's factual conclusions as to the extent of AEtna's knowledge. AEtna presents a reasonable argument that L & H was authorized in terminating its plan when it did.[7] It is apparent that AEtna did not knowingly participate in, or conceal, a breach of duty when AEtna acted under the reasonable belief that no breach had occurred.
 
 
 21
 In addition, appellants allege that since AEtna knew that appellants were seeking continuing coverage, and it knew that its co-fiduciary L & H had failed to provide that coverage, AEtna had an obligation to inform appellants of the breach and/or take steps to correct it. Given our conclusion as to AEtna's relative responsibilities concerning COBRA coverage, appellants' contention does not support reversal of the district court.
 
 
 22
 Responsibility as a co-fiduciary "must be limited to the scope of the fiduciary's duty." Pension Fund-Local 701 v. Omni Funding Group, 731 F.Supp. 161, 176 (D.N.J. 1990).[8] As stated, § 1101(a)(2) provides that a co-fiduciary is liable to the extent of "the administration of his specific responsibilities which give rise to his status as a fiduciary." Appellants' claim for relief rests on their rights to continuing coverage under COBRA. AEtna was not obligated to provide anything to appellants pursuant to COBRA. Assuming that AEtna's discretionary function in making certain eligibility decisions involving the Plan, subject to the final approval by L & H, supports a conclusion of a limited fiduciary status, the aspect of L & H's breach which involved appellant's COBRA rights, and are not related to eligibility determinations, does not fall within the scope of AEtna's alleged fiduciary duty.[9] AEtna certainly had responsibilities under the Plan, but as defined by the express requirements of COBRA, it had no responsibility relating to continuing coverage. It involves something of a leap to impose on someone who had no duty to make any notification concerning rights under COBRA not only the obligation to state accurately the factual basis of those rights but also, when doing so, to correct any errors of fact made by the responsible party. L & H, not AEtna, was responsible for any "payment of benefits under the Plan" in the way of COBRA coverage for which the appellants may have qualified. L & H as the plan sponsor and administrator was the sole party responsible for the continuing coverage. Accordingly, any relevant breach concerning rights to continuing coverage was attributable to L & H, not AEtna.[10]
 
 
 23
 It is clear that AEtna did not breach any duty owed to appellants. The summary judgment in favor of AEtna is, accordingly,
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 See Coleman v. Nationwide Life Ins. Co., No. 91-2646 (4th Cir. July 1, 1992), slip op. at 7
 
 
 [2]
 Services to be provided by AEtna as set out in the ASC included: development and design of the Plan and additions to the Plan, assistance with enrollment of employees, development of record keeping systems, development and installation of a benefit-account structure for the Plan, and preparation of accounting reports. Also, AEtna was provided with the "authority to make determinations on behalf of [L & H] with respect to benefit payments under the Plan and to pay such benefits, subject, however, to [a right of review by L & H]."
 
 
 [3]
 In combination, the three provisions provide that: "The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event [including Chapter 11 bankruptcy] is entitled, under the plan, to elect, within the election period [which must be 60 days following the qualifying event], continuation coverage under the plan."
 
 
 [4]
 Coleman v. Nationwide Insurance Co., No. 91-2646, 91-2652, F.2d (4th Cir. July 1, 1992)
 
 
 [5]
 Various courts have ruled that a plan participant may not be imbued with obligations specially assigned to the plan "administrator" if the participant is not designated as such. Davis v. Liberty Mutual Ins. Co., 871 F.2d 1134, 1138 (D.C. Cir. 1989); Moran v. Aetna Life Insurance Co., 872 F.2d 296, 298-300 (9th Cir. 1989)
 
 
 [6]
 That section provides for a"prudent man standard of care" obligating a fiduciary to provide benefits, and defray reasonable expenses "with care, skill, prudence, and diligence under the circumstances...."
 
 
 [7]
 AEtna argued that L & H was authorized in terminating the plan by corporate resolution or other methods. It also cited precedent indicating that "ERISA simply does not prohibit a company from eliminating previously offered benefits which are neither vested nor accrued." Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir. 1986)
 
 
 [8]
 Additional regulations support a limitation on the potential liability for a fiduciary who, as AEtna here, was not a named fiduciary:
 A fiduciary with respect to the Plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described.... The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions which he or she performs with respect to the plan.
 
 
 [29]
 C.F.R. § 2509.75-8
 
 
 [9]
 Recently, in Coleman, No. 91-2646, we evaluated the extent of fiduciary responsibility extended by ERISA. We concluded that" a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue." Slip op. at p. 12
 
 
 [10]
 It is not, in view of the conclusions we have reached, necessary to investigate whether a plan participant may bring suit alleging a fiduciary's duty breach under ERISA and seeking enforcement of the participant's individual rights, or if such a suit may only be brought on behalf of the plan itself. See Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 140-43 (1985)