IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-330-CV





SOUTHWESTERN BELL TELEPHONE COMPANY, ET AL.,



 APPELLANTS


vs.





SALATHIEL DeRUSSE,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 471,364, HONORABLE PETE LOWRY, JUDGE PRESIDING



 




 Southwestern Bell Telephone Company, Southwestern Bell Corporation Savings
Plan for Salaried Employees, and Southwestern Bell Corporation Employee Stock Ownership Plan
appeal from a judgment awarding Salathiel DeRusse $90,000 in attorney's fees under the
Employee Retirement Insurance Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (1988). (1) 
We will reverse the trial-court judgment and remand the cause for proceedings consistent with this
opinion.


THE CONTROVERSY


 In 1986, Michael Wallace, a Southwestern Bell employee, executed a form
designating Salathiel DeRusse, his roommate since 1984, beneficiary of the proceeds from
Wallace's employee benefits payable at death. In 1989, Wallace became seriously ill and, on June
30, 1989, while hospitalized, executed a form giving Wallace's mother a general power of
attorney. A few hours before Wallace's death on July 27, 1989, his mother, acting under the
power of attorney, executed and submitted to Southwestern Bell a new beneficiary designation
naming Wallace's two sisters primary beneficiaries, in equal parts, of Wallace's benefits.

 At the time of Wallace's death, these benefits included: (1) $46,000 in group life
insurance under the Southwestern Bell Group Life Insurance Program, administered by American
General Life Insurance Company; (2) $92,000 in supplementary life insurance under the
Southwestern Bell Supplementary Life Insurance Program, also administered by American
General; (3) $19,723.43 in an employee savings plan; and (4) $4,227.55 as the value of
accumulated stock in an employee stock-option plan. It is undisputed that these benefits were
subject to ERISA. In addition to the foregoing, Wallace had accumulated additional benefits
totaling $5,019.56. The parties dispute whether these were subject to ERISA, an issue we will
discuss below.

 The day after Wallace's death, Southwestern Bell's benefits office notified DeRusse
that he was the sole beneficiary of Wallace's benefits, notwithstanding the change in beneficiary
submitted by Wallace's mother. On July 31, 1989, four days after Wallace's death, Wallace's
sisters submitted to Southwestern Bell's benefits office a claim to all of Wallace's benefits. On
August 8, 1989, DeRusse received from the manager of Southwestern Bell's benefits office a letter
enclosing the forms necessary to file a claim for benefits under the life insurance policies. 
DeRusse did not receive forms necessary to claim the remaining benefits. The benefits office sent
to Wallace's sisters the appropriate forms for claiming these benefits. On August 9, 1989,
DeRusse submitted a claim for Wallace's group and supplementary life insurance, which
Southwestern Bell forwarded to American General.

 On August 22, 1989, Southwestern Bell's benefits office notified DeRusse by letter
of the change of beneficiary under the power of attorney. The letter stated that Southwestern
Bell's legal department had determined Mrs. Wallace's power of attorney to be valid under Texas
law; that the new beneficiaries had demanded payment of the benefits; and that proceeds from the
Stock Plan, the Savings Plan, and Wallace's unpaid wages would be paid to the new beneficiaries. 
The letter also informed DeRusse that his claims for the group and supplementary life insurance
had been submitted to the insurance carrier for determination of the proper beneficiary.

 In response, on August 28, 1989, DeRusse's attorney contacted Southwestern Bell
and American General regarding DeRusse's claims and requested the benefits be interpleaded in
a lawsuit DeRusse intended to file. On that same date, Southwestern Bell issued checks to the
Wallace sisters totalling $5,019.56.

 DeRusse filed suit in district court on September 1, 1989, against Wallace's mother
and sisters (the Wallace defendants), Southwestern Bell Corporation, Southwestern Bell, the Stock
Plan, the Savings Plan, and American General. DeRusse prayed for a declaratory judgment that
he was entitled to Wallace's benefits, invalidation of the beneficiary designation submitted by
Wallace's mother, and relief under various causes of actions, including a breach-of-fiduciary-duty
action under ERISA against all of the Bell entities and American General. Proceeds from the
group and supplementary life insurance and Savings Plan were interpleaded into the registry of
the trial court. The petition in interpleader stated the stock could not be liquidated and the
Savings Plan would hold it in trust until the proper beneficiary could be determined. The
$5,019.56 paid to the Wallace sisters was not interpleaded. 

 On October 24, 1990, on cross-motions for summary judgment, the trial court
granted DeRusse's motion and denied the Wallace defendants' motion. (2) Pursuant to the summary
judgment, DeRusse recovered the proceeds from the group and supplementary life insurance
plans, the Savings Plan, the Stock Plan, and $5,019.56 in unpaid wages and unused vacation pay. 
The lawsuit went to trial on all remaining issues in February 1992. At the time of trial, DeRusse
settled his claims with the Wallace defendants except those for attorney's fees. The Bell entities
agreed to indemnify the Wallace defendants against any judgment awarded against them for
attorney's fees. See Tex. R. Civ. P. 11.

 After a bench trial on the issue of attorney's fees, the trial court rendered judgment
that DeRusse recover from the Bell defendants, based on his claim under ERISA, $90,000 in
attorney's fees plus two-thirds of the court costs. (3) The trial court denied all other relief.

 The Bell defendants bring eleven points of error attacking the trial court's award
of attorney's fees to DeRusse and the court's failure to make additional findings of fact requested
by the Bell defendants. DeRusse, in six cross-points, argues the trial court erred by failing to
award him $200,000 in attorney's fees, the amount he contends he was required to expend because
of the lawsuit.



The Benefits


 ERISA is a federal statute regulating employee pension plans and welfare benefit
plans that provide benefits for contingencies such as disability, illness, accident, death, or
unemployment. Its purpose is "to promote the interests of employees and their beneficiaries in
employee benefit plans." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90 (1983). The statute
provides that a civil action, such as that brought by DeRusse, may be brought by a beneficiary
to recover benefits due him. § 1132(a)(1)(B). In such an action, the statute permits a court "in
its discretion [to] allow a reasonable attorney's fee and costs of action to either party." 
§ 1132(g)(1).

 The trial court, in the summary-judgment proceeding, determined that DeRusse was
entitled to certain benefits, the disposition of which was controlled by Southwestern Bell's
beneficiary-designation form. (4) In the attorney's fees suit, DeRusse claimed a breach under ERISA
of fiduciary duties by the Bell defendants, see § 1104, and the trial court awarded him fees under
§ 1132(g). However, the trial court could only award fees attributable to ERISA claims. See
Harsch v. Eisenberg, 956 F.2d 651, 663 (7th Cir.), cert. denied, 113 S. Ct. 61 (1992). 
Therefore, the nature of the benefits and the Bell defendants' acts in administering the benefits
controlled the decision regarding DeRusse's claim for ERISA attorney's fees. 

 The group and supplementary life insurance plan proceeds, which totalled
$138,000, were administered by American General, the underwriter of the insurance benefits. 
The contract between Southwestern Bell Corporation and American General designates
Southwestern Bell Corporation the fiduciary of the program "with the rights and obligations as
set forth in the group insurance contract." The contract further allows Southwestern Bell
Corporation to delegate duties to American General and allows American General to be "arbiter
of claims." The life insurance plan establishes claim-and-review procedures consistent with
ERISA.

 Wallace's Savings Plan proceeds totalled $19,723.43 at the time of his death. The
Savings Plan establishes Southwestern Bell Corporation as administrator and sponsor of that Plan. 
The Corporation is charged with appointing a Benefit Plan Committee having all powers necessary
to administer the Savings Plan, save those vested in Southwestern Bell Corporation and the
trustees of the Plan. The Corporation and Committee may delegate authority to officers or
employees of employing companies. (5) The Committee appoints a person or persons, known as
Savings Plan Administrators, who have authority to grant or deny claims under the Plan. The
Plan provides for the Committee's review of claims denied by Administrators. Both Southwestern
Bell Corporation and the Committee are named in the Plan as ERISA fiduciaries with respect to
the particular duties allocated to each of them. The Plan allows the fiduciaries to delegate any of
their responsibilities to employing companies and Savings Plan Administrators.

 At the time of his death, Wallace had acquired 84.511 shares of Southwestern Bell
Corporation stock, valued at $4,227.55, in the Employee Stock Ownership Plan. The Stock Plan
is organized in a way similar to the Savings Plan, Southwestern Bell Corporation being charged
to appoint a Benefit Plan Committee. The Corporation and Committee may delegate authority to
employees of the employing companies. All questions related to eligibility are within the purview
of the Committee, whose decision is final. The Plan names both Southwestern Bell Corporation
and the Committee as fiduciaries "with respect to the particular duties and responsibilities
provided in the Plan to be allocated to [each]." The Plan establishes a claims-review procedure
and provides "[t]he Committee shall determine conclusively for all parties all questions arising in
the administration of the Plan."

 Unlike the benefits discussed above, which all parties agree are regulated by
ERISA, the proper characterization of Wallace's remaining benefits, which total $5,019.56, is
disputed in this appeal. At the time Southwestern Bell elected to honor the change in beneficiary
submitted by Wallace's mother, it disbursed to Wallace's two sisters, by Southwestern Bell check,
$5,019.56 representing unpaid wages and unexpended paid vacation time. In the summary
judgment, the trial court awarded these benefits to DeRusse as "wages, unused vacation pay and
excused paid work days." Not until after summary judgment had been rendered for DeRusse did
Southwestern Bell first contend that only $3,552.28 of the $5,019.56 constituted unpaid wages,
which are not an ERISA benefit; the remainder, according to Southwestern Bell, was actually an
ERISA-controlled benefit administered by the Disability Plan, a plan never named as a defendant
in this suit and not covered by the beneficiary-designation form. (6) DeRusse contends the entire
$5,019.56 is an ERISA benefit administered and controlled by Southwestern Bell.



Southwestern Bell's Fiduciary Status


 In their second point of error, the Bell defendants contend the court erred in
awarding attorney's fees against Southwestern Bell because it is not an ERISA fiduciary that
controlled and administered funds subject to ERISA.

 A party is a fiduciary under ERISA to the extent it exercises discretion over the
management of plan assets, renders investment advice for a fee, or exercises discretionary control
over the administration of the plan. § 1002(21)(A). Federal courts have given the term a liberal
construction in keeping with the remedial purpose of ERISA. See Donovan v. Mercer, 747 F.2d
304, 309 (5th Cir. 1984). Whether a party is a fiduciary is determined by the authority a party
exercises over an employee benefit plan. Id.

 DeRusse contends Southwestern Bell is a fiduciary under ERISA because it
controlled the decision to make payment of the benefits to Wallace's sisters. We will first discuss
this argument as it pertains to those of Wallace's benefits that Southwestern Bell actually
disbursed. The record reflects that Southwestern Bell made the decision to disburse $5,019.56
to Wallace's sisters. Therefore, Southwestern Bell's fiduciary status turns on whether the
$5,019.56 was accrued under an ERISA employee benefit plan.

 We agree with the Bell defendants that the $3,552.28 in unpaid wages was not an
ERISA benefit. See Massachusetts v. Morash, 490 U.S. 107, 114 (1989) (employer's policy of
paying discharged employees from general assets for unused vacation time does not constitute
benefit plan). (7) Accordingly, Southwestern Bell's unilateral action in disbursing this amount to the
Wallace sisters was not subject to ERISA regulation.

 Distribution of the remaining $1,467.28, even if we consider it an ERISA benefit
under the Disability Plan, was not controlled by a beneficiary-designation form. (8) The Plan allows
the Plan Committee, at its discretion, to pay the benefits to the decedent's spouse or other
"suitable person" for use in payment of death and burial expenses or for the benefit of anyone
dependent upon the decedent. Therefore, DeRusse was not entitled to this benefit on the basis of
the form designating him beneficiary of Wallace's other benefits. (9)

 Southwestern Bell's fiduciary status relative to the remaining benefits turns on the
types of tasks performed by Southwestern Bell personnel. The record reflects that on July 27
Mrs. Wallace and her attorney went to the Southwestern Bell office. There they met with
Wallace's supervisor, Randall Johnson. At the time, Johnson was shown Mrs. Wallace's power
of attorney and asked to assist in making the change of beneficiary. Johnson provided Mrs.
Wallace with Southwestern Bell's instructions and form for beneficiary designation and, because
of his unfamiliarity with such matters, made a long-distance conference call to B. F. Cottingham,
district manager of employee benefits in Southwestern Bell's benefits office in San Antonio. (10) 
Cottingham testified that at the time of this discussion, he was aware of Southwestern Bell's rule
requiring that changes of beneficiary, effected under a power of attorney, be accompanied by a
court order. (11) In any case, Mrs. Wallace was not informed of the rule, and Southwestern Bell
accepted the new beneficiary-designation form, which was forwarded by Southwestern Bell's
benefits office to American General and the Plan Administrators.

 A party is a fiduciary only with respect to those aspects of the plan over which it
exercises authority or control. Sommers Drug Stores v. Corrigan Enters., Inc., 793 F.2d 1456,
1459-60 (5th Cir. 1986), cert. denied, 479 U.S. 1034 (1987). Although the Savings Plan and the
Stock Plan allow delegation of authority to an employing company, the record does not contain
any evidence indicating what duties and responsibilities, if any, were delegated to Southwestern
Bell. We therefore must look at the functions Southwestern Bell performed.

 All contact with DeRusse was through the Southwestern Bell benefits office in San
Antonio. Personnel in the office, who were Southwestern Bell employees, accepted Mrs.
Wallace's change-of-beneficiary form, processed the claims, contacted DeRusse regarding his
claims, and forwarded to the Plans the beneficiary-designation forms and Mrs. Wallace's power
of attorney. In other words, the Southwestern Bell office served as liaison between the
beneficiaries and the Plans. There is, however, no evidence that Southwestern Bell made the
decisions to deny DeRusse benefits from the Savings Plan and Stock Plan. Nor is there evidence
that Southwestern Bell had power to make decisions regarding plan policy, interpretations, or
procedures. Further, the record is clear that the decision-making power on the life-insurance
benefits lay exclusively within American General's control.

 ERISA regulations reject ministerial functions as being within the scope of the
fiduciary responsibilities outlined in section 1002(21)(A). Among the functions expressly rejected
as fiduciary in nature are:



( 1) Application of rules determining eligibility for participation in benefits;


 . . . . 


( 3) Preparation of employee communications materials;


 . . . .


( 6) Calculation of benefits;


 . . . .


( 9) Preparation of reports concerning participants;


(10) Processing of claims; and


(11) Making of recommendations to others for decision of plan administration.



29 C.F.R. § 2509.75-8; see also Kerns v. Benefit Trust Life Ins. Co., 790 F.Supp. 1456, 1460-61
(E.D. Mo. 1992). Given these express guidelines for use in determining fiduciary status, one
cannot reasonably conclude that Southwestern Bell was a fiduciary. (12) The record indicates
Southwestern Bell's role was limited to accepting and transmitting to another the beneficiary-designation form executed under the power of attorney, albeit absent the court order required by
the rules. However, the ultimate decision-making authority with regard to these benefits lay
elsewhere. Accordingly, we sustain the Bell defendants' second point of error. 



 Innocent Stakeholder Argument
 

 In points of error one and eight, the Bell defendants contend the trial court erred
in awarding ERISA attorney's fees against them because they were innocent stakeholders and
there was no evidence or insufficient evidence to support the trial-court finding that they were not
innocent stakeholders of Wallace's benefits. (13)

 A party may maintain an interpleader action when the party may be exposed to
multiple liability because of conflicting claims. Tex. R. Civ. P. 43. The availability of the
remedy of interpleader is contingent upon the existence of a bona fide controversy between the
claimants, and the stakeholder must have a reasonable doubt, either of fact or law, as to which
claimant is entitled to the funds at issue. Great Am. Reserve Ins. Co. v. Sanders, 525 S.W.2d
956, 958 (Tex. 1975). The interpleading party must act with diligence and impartiality to secure
for itself the benefits conferred upon a mere stakeholder under a proper bill of interpleader. 
National Life & Accident Ins. Co. v. Thompson, 153 S.W.2d 322, 323-24 (Tex. Civ. App.--Waco
1941, writ ref'd). When interpleader is sought in good faith, the stakeholder is entitled to costs
and attorney's fees. When an interpleading party is responsible for the conflict regarding the
funds, however, that party is not entitled to attorneys' fees incurred in interpleading the claimants. 
Brown v. Getty Reserve Oil, Inc., 626 S.W.2d 810, 815 (Tex. App.--Amarillo 1981, writ dism'd).

 The record, as discussed above, indicates that Southwestern Bell accepted Mrs.
Wallace's change of beneficiary and forwarded it to American General, the Savings Plan
administrator, and the Stock Plan administrator. American General's manager of group benefits
testified that he would not have distributed the benefits to the rival beneficiary claimants in light
of Southwestern Bell Corporation's rule governing changes of beneficiaries. Had American
General not been put on notice by DeRusse's attorney, the manager said, American General would
have made a determination of the stronger claim, approached the parties with its determination,
and "hope[d] that they would work something out together." Only if this process failed would
American General have looked to interpleader.

 However, there is no testimony in the record from representatives of the Plan
defendants. (14) The inferences that may be drawn from the documentary evidence and testimony
of Southwestern Bell personnel is that, in ignorance or disregard of Southwestern Bell
Corporation's rule governing beneficiary changes, the Plan administrators made the decision
sometime between August 17 and August 18 to distribute proceeds from the Plans to Wallace's
sisters. The appropriate forms for distribution were sent to Wallace's sisters before DeRusse was
afforded an opportunity to request a review of the claim. The evidence indicates, had it not been
for the intervention of DeRusse's attorney, the Plan defendants would not have voluntarily paid
DeRusse. Accordingly, we believe it lay within the trial court's discretion to determine that the
Plan defendants were not impartial stakeholders. We overrule points of error one and eight as to
the Plan defendants.

 In point of error nine, the Bell defendants attack the sufficiency of the evidence to
support several of the trial court's findings and conclusions of law pertinent to the court's
determination that the Bell defendants were not innocent stakeholders. (15) In this same point of
error, the Bell defendants attack the trial court's conclusions of law that the Bell defendants'
actions in regard to each of these factors were arbitrary and capricious. (16) The Bell defendants
argue that "findings" of arbitrary and capricious actions have no place in a suit for ERISA
attorney's fees. (17)

 The trial court found that the Bell defendants did not timely or voluntarily pay the
benefits to DeRusse; did not enforce the applicable rules on change-of-beneficiary designations;
notified DeRusse and Wallace's sisters that the sisters, not DeRusse, were the beneficiaries; did
not inform DeRusse of the ERISA regulations or remedies available for denial of claims; and did
not provide a claim or review procedure by which DeRusse could challenge the payment of the
funds to Wallace's sisters. As to each of these findings, the trial court concluded the Bell
defendants' actions were arbitrary and capricious.

 We believe the trial court's "findings" and "conclusions" constitute the factors the
trial court considered in making its assessment of the attorney's fees award. Moreover, we
believe the trial court's choice of the words "arbitrary and capricious" does not indicate the court
applied an inappropriate standard of review to the attorney's fees suit; rather, it reflects the court's
evaluation of the relevant factors in reaching a conclusion that the Bell defendants' actions were
not reasonable under the circumstances.

 All of these factors are supported by the record. The only one we do not believe
relevant to the court's determination of attorney's fees in this case is the lack of claim-and-review
procedures available to DeRusse for the funds disbursed to Wallace's sisters. As discussed above,
these funds were not subject to ERISA or were not covered by the beneficiary-designation form.

 Therefore, because it was improper for the trial court to consider Southwestern
Bell's failure to afford a review procedure as to the funds disbursed to Wallace's sisters, we
sustain this point of error as to that "finding" and "conclusion." We overrule it in all other
respects as it pertains to the Plan defendants.



 Exhaustion of Remedies


 ERISA requires every employee benefit plan to establish a claims procedure, which
must provide for adequate written notice of claim denials as well as an opportunity for "full and
fair review" of benefit denials. § 1133. The Savings Plan and Stock Plan did provide for such
procedures, requiring a claimant to file a request with the plan administrator or coordinator,
guaranteeing written notice of denial, and outlining procedures for further review of denied
claims.

 The Bell defendants argue that DeRusse failed to exhaust his administrative
remedies under the plans before filing his ERISA claims in court. Although the statute does not
mention the exhaustion-of-remedies doctrine, federal courts have held consistently that, as a matter
of sound policy, the doctrine should be applied. See, e.g., Mason v. Continental Group, Inc., 763
F.2d 1219, 1227 (11th Cir. 1984), cert. denied, 474 U.S. 1087 (1986). Despite the applicability
of the doctrine, however, courts have made exceptions when meaningful access to administrative
remedies was denied or resort to such remedies would be futile. See Amato v. Bernard, 618 F.2d
559, 568 (9th Cir. 1980); cf. 4 Kenneth C. Davis, Administrative Law Treatise § 26:1 (2d ed.
1983). Further, whether to apply the exhaustion requirement is a decision committed to the trial
court's discretion; it can be overturned on appeal only if the trial court clearly abused its
discretion. Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 846 (11th Cir.
1990).

 The plans involved in the present case provided a procedure for claiming benefits
and for review of denials. However, the Plan defendants, who controlled the plan administrative-
review procedures, exercised control in a manner to deny DeRusse meaningful access to those
procedures. DeRusse was not provided with notice or claim forms as to these benefits, even
though he was the named beneficiary under Wallace's original, properly executed form. 
Additionally, DeRusse was never apprised of administrative remedies available to him under the
Plans and ERISA. Under these facts, we believe the trial court did not abuse its discretion in
declining to apply the "exhaustion" doctrine. See Vaca v. Sipes, 386 U.S. 171, 184-85 (1967). 
We overrule the Bell defendants' sixth point of error.



Joint and Several Liability
 

 In their fifth point of error, the Bell defendants argue that the trial court erred by
awarding attorney's fees jointly and severally against the Bell defendants rather than by
apportioning liability among them. The Bell defendants cite no authority to support this position;
similarly, DeRusse offers no authority to support the contrary position. 

 ERISA allows an employee benefit plan to be sued as an entity, as DeRusse sued
the Savings Plan and the Stock Plan in this cause. See § 1132(d)(1). The statute further provides: 
"Any money judgment . . . against an employee benefit plan shall be enforceable only against the
plan as an entity and shall not be enforceable against any other person unless liability against such
person is established in his individual capacity under this subchapter." § 1132(d)(2). The express
words of the statute limit the circumstances in which joint liability exists. Because ERISA charges
a fiduciary with performing duties specific to its plan, see § 1104, we see no justification for
applying joint and several liability when there is no evidence that a fiduciary of one plan exercised
discretionary control over another plan.

 We believe the trial court, in assessing joint and several liability, was considering
the liability of Southwestern Bell. However, as we stated before, Southwestern Bell was not a
fiduciary; therefore, it was improper to assess joint and several liability against it. We read
ERISA to preclude joint and several liability under the facts of this case; the trial court erred in
failing to apportion liability among the defendants. The fifth point of error is sustained. (18)



Request for Additional Findings


 Appellants timely requested nine additional findings of fact from the trial court. 
See Tex. R. Civ. P. 298. The failure of a trial court to file additional requested findings is not
reversible error if the record demonstrates the appealing party has suffered no injury. Wentz v.
Hancock, 236 S.W.2d 175, 176 (Tex. Civ. App.--Austin 1951, writ ref'd). In this cause, four of
the requested additional findings concerned matters not disputed in the evidence; the court,
therefore, committed no error in refusing to make these four findings. See Landscape Design
& Constr., Inc. v. Harold Thomas Excavating, Inc., 604 S.W.2d 374, 378 (Tex. Civ. App.--Dallas
1980, writ ref'd n.r.e.). The remaining requested additional findings were disposed of directly
or indirectly by the original findings, were not supported by the evidence, or were contrary to
findings previously made by the trial court. Accordingly, the trial court's failure to make these
additional findings was not error or did not cause harm to the Bell defendants. See Strickland v.
Coleman, 824 S.W.2d 188, 193 (Tex. App.--Houston [1st Dist.] 1991, no writ). We overrule
point of error eleven.



Attorney's Fee Award


 The Bell defendants and DeRusse both challenge the attorney's fees awarded to
DeRusse. Because the decision to grant attorney's fees is committed to the discretion of the trial
court, its decision will not be disturbed on appeal absent a clear showing of abuse of discretion. 
An abuse of the trial court's discretion occurs if the trial court fails to consider a factor legally
relevant to the determination of a reasonable attorney's fee; rests its determination upon a factor
that it is forbidden by law to consider in arriving at a reasonable attorney's fee; or exaggerates
a legally relevant factor to an unreasonable degree. See Landon v. Jean-Paul Budinger, Inc., 724
S.W.2d 931, 939-40 (Tex. App.--Austin 1987, no writ).

 Under ERISA, the court "in its discretion may allow a reasonable attorney's fee
and costs of action to either party." § 1132(g)(1). Applying the factors set forth in Iron Workers
Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980), the trial court held DeRusse was
entitled to $90,000 in attorney's fees and two-thirds of the court costs. The record reflects the
trial court also considered the amount in controversy in reaching its determination of reasonable
attorney's fees.

 In points of error three and four, the Bell defendants contend there was no evidence
or insufficient evidence to support the award of attorney's fees and the trial court abused its
discretion in awarding the fees. In point of error seven, the Bell defendants attack the legal and
factual sufficiency of the evidence to support specific trial-court findings relevant to the award of
the fees.

 Applying the Bowen factors in this cause, the trial court found (1) the Bell
defendants were culpable and acted in bad faith in not taking steps to pay the benefits to DeRusse
after they learned of the rule that required a power of attorney to be accompanied by a court order
to change a beneficiary designation; (2) the fee award should deter similar behavior in others in
similar circumstances; (3) the results obtained by DeRusse in this case would be of substantial
benefit to similarly situated beneficiaries of these plans; (4) the unquestionable merits of
DeRusse's position justified a fee award; and (5) the lack of merit in the Bell defendants' position
justified a fee award to DeRusse. See Bowen, 624 F.2d at 1266; see also Donovan v.
Cunningham, 716 F.2d 1455 (5th Cir. 1983), cert. denied, 467 U.S. 1251 (1984). These factors
should be used as "guidelines to assist [courts] in exercising their discretion." Bowen, 624 F.2d
at 1266. The district court analyzed each of these factors; its findings, with the exception of the
third one listed above, are supported by the record. The remaining factors weigh heavily in
DeRusse's favor, and we cannot say the trial court's decision to award attorney's fees was an
abuse of discretion or that the court would have reached a different result but for its finding on
the third factor. We overrule the Bell defendants points of error three, four, and seven.

 In the Bell defendants' tenth point of error, they contend the award of attorney's
fees was excessive because the recovery did not "bear some reasonable relationship to the amount
in controversy." See Argonaut Ins. Co. v. ABC Steel Prods. Co., Inc., 582 S.W.2d 883, 889
(Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.). They base this argument on their contention
that the amount in controversy, as it relates to the Bell defendants, is less than $30,000. The trial
court considered the amount in controversy to be the value of all Wallace's employee benefits, an
amount in excess of $160,000. The Bell defendants argue that the bulk of DeRusse's recovery,
$138,000, resulted from the Group and Life Insurance Plans administered by American General,
against whom the trial court denied all relief. Further, the $5,019.56 paid to the Wallace sisters
was never interpleaded and was not a proper basis for recovery of attorney's fees under ERISA. 
Therefore, the trial court was limited to consideration of the value of the Stock Plan and Savings
Plan, a value equal to $23,950.98, in awarding attorney's fees. We agree.

 As we stated above, the $3,552.28 in unpaid wages, which was part of the
$5,019.56 disbursed to Wallace's sisters, is not an ERISA benefit. Therefore, it was not properly
a part of the amount in controversy. See Harsch, 956 F.2d at 663 (a trial court may award
plaintiffs "only those fees reasonably attributable to claims that may be brought under ERISA"). 
And despite the Bell defendants' concession that $1,467.28 of the amount distributed as unpaid
wages was an ERISA benefit, this benefit was not controlled by the beneficiary-designation form
naming DeRusse as beneficiary. Therefore, to the extent that the trial court considered the
$5,019.56 in awarding attorney's fees, it abused its discretion.

 The trial court also included in the amount in controversy the value of Wallace's
life-insurance proceeds. We believe, by including these sums in the amount in controversy, the
trial court was considering Southwestern Bell's benefit office's role in advising, accepting,
processing, and forwarding to American General a beneficiary-designation form that was invalid
under Southwestern Bell's own rules. However, because the trial court's award is based solely
on ERISA and Southwestern Bell is not a fiduciary under ERISA, its action with regard to these
funds is irrelevant. (19) Further, there is no evidence that the two Bell Plan defendants, the Savings
Plan and the Stock Plan, had anything to do with the administration or payment of the life-insurance proceeds. Therefore, to the extent the trial court considered the life-insurance proceeds
in its determination of attorney's fees, it abused its discretion.

 We iterate, however, that the amount in controversy was not the sole factor the trial
court considered in making its attorney's fees award. We therefore sustain the Bell defendants'
tenth point of error only to the extent the trial court's award reflects consideration of amounts not
properly includable in the amount in controversy. However, because we cannot know from the
record the weight the trial court accorded this factor in light of other relevant factors, we make
no determination as to whether the fee awarded was excessive.

 In his cross-appeal, DeRusse brings six points of error, primarily attacking as
improper the trial court's consideration of the amount in controversy in determining reasonable
attorney's fees under ERISA. DeRusse sought attorney's fees in the amount of $200,000, a
calculation he contends was based on the number of reasonable and necessary hours expended by
his attorneys. The trial court awarded only $90,000.

 In his first five cross-points, DeRusse complains the trial court erred by awarding
fees based solely on the amount in controversy. He bases this argument on the trial court's
finding that "[c]onsidering solely the amount in controversy, the total fees charged by Plaintiff's
lawyers are not reasonable." DeRusse concedes, in argument under these points, that under state
case law the amount in controversy is a legally relevant factor to consider when determining
reasonable and necessary attorney's fees. See United States Steel Corp. v. Whitley, 636 S.W.2d
465, 470 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.). He argues, however, the trial court
abused its discretion by exaggerating to an unreasonable degree the amount-in-controversy factor. 
See Landon, 724 S.W.2d at 940.

 The court's finding indicates that, if it were to base its determination on only one
factor, it would find DeRusse's fee request unreasonable. However, the record reflects the trial
court properly considered a number of factors in reaching its determination, only one of which
was the amount in controversy. We therefore cannot say that the trial court abused its discretion
in the particular claimed by DeRusse.

 Also in his fifth cross-point, DeRusse attacks the trial court's findings that the
amount in controversy was only the amount of Wallace's benefits and did not include the
attorney's fees incurred by DeRusse to obtain the benefits. DeRusse argues that the amount in
controversy included the benefits plus reasonable attorney's fees. As authority for this
proposition, DeRusse quotes testimony of his own expert witness, which he contends is supported
by Texas case law. However, the only decision DeRusse cites in his brief refers to what may be
considered in the amount in controversy when determining a court's jurisdictional limits. See
Johnson v. Universal Life & Accident Ins. Co., 94 S.W.2d 1145 (Tex. 1936). We decline to
interpret Johnson as holding that, for purposes of determining the reasonableness of attorney's
fees, the amount in controversy includes the amount sought to be recovered plus the claimed
attorney's fees. We overrule DeRusse's cross-points of error one through five.

 In cross-point of error six, DeRusse complains the trial court erred in considering
the amount in controversy because it was not a proper factor for consideration in an ERISA
attorney's fees case where evidence indicated that the fees were incurred as a result of the other
party's actions. DeRusse concedes that the amount in controversy has been a factor used by
federal courts in determining reasonableness. See Ursic v. Bethlehem Mines, 719 F.2d 670, 677
(3d Cir. 1983) ("When monetary damages are awarded, the trial court must consider the
relationship between the fee award and the amount of recovery."). (20) DeRusse argues, however,
that this Court should adopt the reasoning of the plurality in City of Riverside v. Rivera, 477 U.S.
561 (1986). (21)

 The Fifth Circuit has rejected the analogy between the purpose of ERISA's fee-shifting provision and the federal civil-rights statutes. See Bowen, 624 F.2d at 1265 (contrasting
purpose of 42 U.S.C. § 1988 with that of ERISA fee-shifting provision); see also Mark H.
Berlind, Note, Attorney's Fees Under ERISA: When Is An Award Appropriate?, 71 Cornell L.
Rev. 1037, 1049-55 (1986) (absent legislative mandate, courts should not equate economic
interests with constitutional rights for fee-shifting purposes). Further, even those federal courts
that adopt the analogy to federal civil-rights statutes have not held it an abuse of discretion to
determine attorney's fees on a contingent-fee basis rather than based on the number of hours
expended by attorneys. See Harsch, 956 F.2d at 663 (although lodestar method preferable, trial
court's application of contingent-fee standard not abuse of discretion).

 Once the trial court in this cause applied the Bowen factors and determined an
award of attorney's fees was appropriate, it was faced with determining a reasonable fee. In
determining reasonableness, most appellate courts generally consider the same set of factors
regardless of the statute. See, e.g., Ursic, 719 F.2d at 673-78; see also Samuel R. Berger, Court
Awarded Attorneys' Fees: What is "Reasonable"?, 126 U. Pa. L. Rev. 281, 285 (1977). Among
those factors is the amount involved and the results obtained. (22) We therefore conclude the trial
court did not abuse its discretion in considering the amount in controversy. We overrule
DeRusse's sixth cross-point of error.



CONCLUSION


 We reverse the trial court's judgment and remand the cause to the trial court to
assess the amount of attorney's fees in light of our holdings and to apportion liability among the
Plan defendants.



 John Powers, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Reversed and Remanded

Filed: September 22, 1993

[Do Not Publish]

1.   Southwestern Bell Corporation and American General Life Insurance Company
were defendants in the suit. The trial court, however, denied relief against them.


 Because of the number of defendants in this cause with "Southwestern Bell" in
their names, we have adopted in this opinion the following method of distinguishing the
individual defendants: Southwestern Bell Telephone Company (Southwestern Bell);
Southwestern Bell Corporation Savings Plan for Salaried Employees (Savings Plan);
Southwestern Bell Corporation Employee Stock Ownership Plan (Stock Plan). To
distinguish Southwestern Bell, the company, from Southwestern Bell Corporation, we will
refer to the corporation by its full name. We will refer to American General Life
Insurance Company as American General.
2.   The summary judgment was severed and appealed to this Court by Wallace's
mother and sisters. This Court affirmed the judgment on August 14, 1991. See Wallace
v. DeRusse, No. 3-91-078-CV (Tex. App.--Austin Aug. 14, 1991) (not designated for
publication). 
3.   The trial court rendered judgment against Southwestern Bell Company, the Savings
Plan, and the Stock Plan, jointly and severally (collectively, the "Bell defendants"). As
we stated above, the trial court denied relief against Southwestern Bell Corporation and
American General. 
4.   The Southwestern Bell beneficiary-designation form that named DeRusse as
Wallace's beneficiary controlled distribution of all life insurance proceeds, savings plan
proceeds, stock plan proceeds, and unpaid wages/reimbursable expenses. The form also
controlled disposition of proceeds from a savings plan for non-salaried employees and a
voluntary contribution plan, plans in which Wallace did not participate and which are not
involved with this lawsuit.
5.   "Employing Company" is defined as Southwestern Bell Corporation or any
subsidiary of the Corporation.
6.   The Disability Plan benefits, unlike the other benefits, are not listed on the
beneficiary-designation form. The Disability Plan states that these benefits may, at the
discretion of the Committee, be paid to a spouse or suitable person selected by the
Committee for use in payment of expenses incident to death of the participant or for the
benefit of anyone dependent upon the deceased at the time of death.


 In other respects, the Disability Plan resembles the other ERISA benefit plans. 
Southwestern Bell Corporation is the Plan administrator and sponsor that appoints a
Committee charged with granting or denying claims for benefits under the Plan. The
Plan provides a procedure for review of denials of benefits. Southwestern Bell
Corporation, the Committee, and others are named as fiduciaries with respect to the
duties and responsibilities allocated to each by the Plan.
7.   The Supreme Court explained that the purpose behind ERISA was to protect
employees from mismanagement of funds accumulated in employee benefit plans. The
Court reasoned that ordinary vacation payments are generally fixed, due at known times,
and not dependent on contingencies outside the employee's control. Therefore, they
present none of the risks ERISA is intended to address. Id. at 114.


 The Court distinguished those circumstances when vacation benefits are paid from an
organized plan or fund, in which case the regulatory provisions of ERISA would apply. Id. 
The evidence in this case, however, indicates unpaid wages were paid from the general
Southwestern Bell Company account, not a special plan account.
8.   The record indicates Southwestern Bell did exercise discretionary control over these
funds. The Southwestern Bell check disbursing the $1,467.28 as part of the $5,019.56 in
unpaid wages and vacation pay was issued August 28. Documentary evidence in the
record indicates the Employee Benefit Committee for the Disability Plan did not approve
the disbursement as to the $1,467.28 until August 30. 
9.   The record reflects Southwestern Bell employees had difficulty in characterizing the
nature of these funds. The Southwestern Bell benefits office employee responsible for
handling death benefits testified the $1,467.28 was unpaid wages and the $3,552.28 was
vacation pay. The district manager of Southwestern Bell's employee benefits, in his first
deposition, characterized the entire amount as unpaid wages. In his second deposition, he
characterized it as a plan benefit. 
10.   Cottingham was also secretary of the Employee Benefit Committee. This, however,
is insufficient to confer fiduciary status on Southwestern Bell. See Gelardi v. Pertec
Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985). 
11.   Rule 3(C) of Southwestern Bell Corporation's "Rules for Employee Beneficiary
Designations" states:


An outstanding beneficiary designation is revoked when a subsequently
executed beneficiary designation is submitted by the employee in proper
form to, and accepted by, the employing corporation of the program
administrators prior to the employee's death. A conservator or attorney in
fact may not revoke or change a beneficiary designation of the employee except
by court order approving the revocation or change.


(emphasis added).
12.   We note that courts have, in limited instances, extended liability under ERISA to
nonfiduciaries who knowingly participate in fiduciary breaches. See, e.g., Lowen v. Tower
Asset Management Inc., 829 F.2d 1209, 1220 (2d Cir. 1987) (in suit brought by trustees of
benefit plan, related corporation and shareholders could not "use shell-game-like maneuvers to
shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a
separate legal entity under their control."); Alman v. Danin, 801 F.2d 1 (1st Cir. 1986)
(incorporators of inadequately funded corporation could not plead corporate form to avoid
personal liability for failure of corporation to meet obligation to employee benefit plans);
Thornton v. Evans, 692 F.2d 1064 (7th Cir. 1982) (suit under ERISA against nonfiduciary
parties for conspiracy with fiduciaries in schemes violating statutory trust laws against fund as
a whole may be brought as class action or derivative action). These holdings, however, are
premised on the trust-law concept that those who have conspired with a trustee or fiduciary
could be liable to the extent they have profited from the breach. See Fremont v. McGraw-Edison Co., 606 F.2d 752, 759 (7th Cir. 1979), cert. denied, 445 U.S. 951 (1980); see also
Restatement (Second) of Trusts § 256 (1957). That is not shown here.
13.   The trial court made extensive findings of fact and conclusions of law. Although
many of these statements are not findings of fact or conclusions of law as those terms are
generally understood, they reflect the factors the trial court considered in the attorney's
fees award. We shall review the trial court's actions in light of these factors for abuse of
discretion.

14.   Because of our disposition of point of error number two, Southwestern Bell's lack
of fiduciary status precludes consideration of its actions for purposes of ERISA attorney's
fees. In the balance of our opinion, we shall refer to the two remaining defendants, the
Stock Plan and the Savings Plan, as the Plan defendants.
15.   In their brief, the Bell defendants contend that the trial court's finding that "[n]ovel
and difficult questions were involved in this case" indicates their was a reasonable doubt
as to the proper beneficiaries and supports the Bell defendants' position that they were
innocent stakeholders. We believe, however, this was one of the factors, among several,
that the trial court considered, not in determining whether to award attorney's fees, but
in assessing the reasonableness of the fee. See note 22 infra and accompanying text.
16.   The Bell defendants contend the conclusions of law are more appropriately
characterized as findings of fact and challenge them as such.
17.   A reviewing court applies the arbitrary and capricious standard of review when
considering the denial of a claim by a fiduciary with discretionary control. Firestone Tire
& Rubber Co. v. Bruch, 489 U.S. 101 (1989).
18.   We note, in the special circumstance where nonfiduciaries have been found to act in
concert with fiduciaries in defrauding a fund, courts have applied joint and several
liability. Commingling of assets and self-dealing, which are not involved here, are
hallmarks of these cases. See, e.g., Lowen, 829 F.2d at 1221. 
19.   In his brief, DeRusse argues that, even if ERISA does not apply to a portion of the
funds, the award can be upheld under the Uniform Declaratory Judgments Act, Tex. Civ.
Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1986 & Supp. 1993). DeRusse bases this
contention on his request for attorney's fees under the Act in his pleadings. However, the
record reflects the trial court rendered judgment "[b]ased upon the evidence, the
argument of counsel, the Rule 11 agreements and pursuant to 29 U.S.C. § 1132(g)," and
denied all other relief.
20.   The Third Circuit later stated that whether a court in an ERISA case could reduce
a fee merely because it was disproportionate to the recovery was not "self-evident" in light
of City of Riverside v. Rivera, 477 U.S. 561 (1986), in which a plurality of the Court held that
a fee award under 42 U.S.C. § 1988 did not have to be proportionate to the damage recovery. 
Bell v. United Princeton Properties, Inc., 884 F.2d 713, 724 (3d Cir. 1989). The Third
Circuit, however, declined to address the issue of whether the reasoning of Rivera applied to
an ERISA case.
21.   In Rivera, the plurality of four stated that although the amount of damages awarded is
"one of many factors that a court should consider in calculating an award of attorney's fees"
pursuant to 42 U.S.C. § 1988, there was no requirement under § 1988 that the fee be
proportionate to the plaintiff's recovery. 477 U.S. at 574.
22.   The factors, which the Fifth Circuit enumerated in Johnson v. Georgia Highway
Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), include: (1) the time and labor
required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the
legal service properly; (4) the preclusion of other employment by the attorney due to
acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)
time limitations imposed by the client or the circumstances; (8) the amount involved and the
results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and length of the professional relationship with the
client; and (12) awards in similar cases. We note the trial court considered a number of these
factors, as reflected in its findings of ultimate fact.